IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROBERTA L. BAILEY,**

        Plaintiff,

  vs.                           Civil Action 2:11-CV-1137
                                  Judge Marbley
                                  Magistrate Judge King

**MICHAEL J. ASTRUE, Commissioner
of Social Security,**

        Defendant.

## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383(c), for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 14, and the Commissioner's *Memorandum in Opposition*, Doc. No. 17.

Plaintiff Roberta L. Bailey filed her applications for benefits on January 29, 2010, alleging that she has been disabled since June 18, 2009, as a result of a stroke, a seizure disorder and chronic deep vein thrombosis. *PageID* 228. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

1

An administrative hearing was held on August 12, 2011, at which plaintiff, represented by counsel, appeared and testified, as did Barry J. Brown, M.Ed., who testified as a vocational expert. In a decision dated September 13, 2011, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. *PageID* 66-78. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 4, 2011. *PageID* 56-59.

Plaintiff was 23 years old on the date that she allegedly became disabled. *PageID* 223. She has a high school education and prior relevant work experience as a general farm worker, a child monitor, a home attendant caring for mentally and physically challenged individuals, and a stock clerk. *PageID* 76, 90, 91, 229, 230, 237-44. She has not worked since June 2009, when she experienced complications with her pregnancy. *PageID* 89-90.

Plaintiff lives with her husband and two year old child. *PageID* 88. She has a driver's license and drives "If I have to." *PageID* 89. Her father drove her to the hearing. *PageID* 89-90.

Plaintiff testified that she began suffering seizures after the birth of her child. PageID 93-94. The seizures occur as often as every day. *PageID* 92. On one occasion, she had five seizures in a single day. *PageID* 93. Once, she fell and hit her head. *PageID* 95. Her seizures last from one to five minutes. *Id.* "I am awake. I am

fully aware of what's going on. My hand will twitch, and then my whole arm will start to shake, and my face will start to droop, my left side of the face will start to droop." *PageID* 93. Before the seizure begins, she becomes lightheaded or dizzy; she "just zone[s] out." *Id.* When she experiences a seizure, she must stop what she is doing because her hand tightens to the point that she cannot move it. *PageID* 93-94. Afterward, she feels tired and lightheaded, cannot function and must lie down for three to four hours. *PageID* 94.  Her last seizure was the night prior to the administrative hearing. *PageID* 97.

Plaintiff sees her neurologist, Leon Rosenberg, M.D., every three to six months. *PageID* 95.  Dr. Rosenberg has not ordered blood work to evaluate the anti-epileptic medication levels in her system. *Id.* Although she has been cleared to drive, she drives only with another adult in the car who can take over when she feels a seizure approaching. *PageID* 110.

Plaintiff also suffers from a hypercoaguable state, for which she takes the blood thinner Coumadin. *PageID* 95-96. The medication causes nose bleeds "about every evening." *PageID* 96-97. She was told the nosebleeds were something she would have to deal with for the rest of her life. *PageID* 97.  She does not go to the dentist, because no dentist will take her as a patient because she takes blood thinners. *PageID* 111-12.

Plaintiff also experiences a migraine headache at least every other day. *PageID* 98. The medication prescribed for the condition helps only occasionally. *PageID* 98-99. When she experiences a "full-blown migraine," which typically occurs two or three times per week and which usually lasts the day, *PageID* 100, she cannot focus and light hurts her eyes; she isolates herself in her room. *PageID* 99.

Plaintiff also suffers from depression and feels "that the world hates me." *PageID* 100. She recently began seeing Adenike Moore, D.O., a psychiatrist, for the condition but medication does not always help. *PageID* 101.  Because of depression, she has neglected her friends. *PageID* 103. She leaves her residence only to go to the doctor. *Id.*

Plaintiff sleeps about six hours per night if she takes Ambien, but is always tired. *PageID* 101-02. She does not nap during the day. *PageID* 102. She experiences problems with memory and concentration. *Id.* Her memory problems began when she began taking Topamax for the seizures. *Id.*

She also testified that her L5 vertebra is deteriorating. *PageID* 104. She experiences back pain every day. *Id.* She takes Flexeril for pain. *PageID* 105.

Plaintiff estimated that she can walk 10-15 minutes before having to sit. *PageID* 105. She has no problems standing. *Id.* She has difficulty lifting a gallon of milk. *PageID* 106.

On a typical day, plaintiff cleans house, cooks and plays with her son. *PageID* 106. She can vacuum, wash dishes, do laundry and clean the bathroom. She does not go to the grocery store by herself because she forgets what she must purchase. *Id.* She reads to her son during the day and watches television. *PageID* 109. She texts her mother every day. *Id.* She attends church on Sunday but must get up during the hour-long service. *Id.* She has no hobbies. *PageID* 110.

She fears working because it "stresses" her and may cause a seizure. Should she fall and hit her head, she fears that she could bleed to death. *Id.*

The vocational expert was asked to assume a claimant with plaintiff's vocational profile who has no physical limitations and can work at all exertional levels but who cannot work around hazards such as heights and dangerous machinery, who cannot operate automotive equipment, and who can only occasionally climb stairs. *PageID* 121. Such a claimant, the vocational expert testified, could perform plaintiff's past relevant work as a child monitor, *PageID* 122, as well as jobs at the unskilled medium level, including such jobs as cleaner (500,000 such jobs nationally and 1,500 such jobs regionally), hand packager (350,000 such jobs nationally and 1,000 such jobs regionally), *PageID* 122, and jobs at the light exertional level, including such jobs as cleaner (300,000 such jobs nationally and 800 such jobs regionally. *PageID* 122-23.

5

Asked to assume plaintiff's subjective complaints, *PageID* 123-24, the vocational expert testified that such a claimant could not participate in competitive work. *PageID* 124. Specifically, the vocational expert concluded that the combination of seizures and headaches would cause the claimant to be off-task and be absent from work more than once per month. *Id.* In this regard, the vocational expert testified that, "for most unskilled work, if you missed one day per month on a consistent basis . . . you would end up getting fired." *Id.*

Plaintiff's medical evidence includes a history of deep vein thrombosis during pregnancy. Hypercoaguable profiles taken in July, and November 2008 were negative. After the birth of her son and the reduction of medication, plaintiff experienced a tonic-clonic seizure and fall.  Testing revealed an intracranial bleed and a superior sagital sinus thrombosis. Plaintiff underwent thrombolysis and medication was prescribed. *PageID* 300-79.

On June 12, 2009, plaintiff was hospitalized with a severe headache. A CT scan revealed edema in the right posterior temporoparietal region. A CT angiography revealed a right temporal and parietal infarct manifested by decreased blood flow. Thrombosis of the right transverse sinus, right sigmoid sinus and right internal jugular vein was also documented and there appeared to be thrombosis of the

6

right vertebral vein at the skull base. Plaintiff's medication was switched to Coumadin. *PageID* 380-401.

Tsuyoshi Inoshita, M.D., is an oncologist who has monitored plaintiff's Coumadin therapy. *PageID* 452-58. On July 1, 2009, plaintiff reported left-sided weakness and headache. *PageID* 457.

Leon Rosenberg, M.D., first saw plaintiff on December 8, 2009 for evaluation of coagulopathy, stroke, and seizures. *PageID* 518-20. Plaintiff reported weekly migraine headaches, which she described as severe on one side, pounding, and accompanied by photophobia and nausea. Plaintiff also reported that she had not experienced a seizure since June 2009. Dr. Rosenberg diagnosed coagulopathy with miscarriage, deep vein thrombosis and cerebral venous thrombosis with infarct. He also noted seizures associated with cerebral ischemia, possible side effects to a medication (Keppra) and insomnia. Dr. Rosenberg noted that, since she had been seizure-free for six months, she could return to driving and to work without limitations. *PageID* 519. When plaintiff saw Dr. Rosenberg on January 8, 2010, she reported no new seizures. *PageID* 517.

Philip Roberts, M.D., is plaintiff's treating family practitioner. *See PageID* 402-40, 475-510, 531-51, 578, 611-21, 644-75. On January 22, 2010, Dr. Roberts recommended that plaintiff cease all activities until she is released by Dr. Inoshita, even

7

though Dr. Rosenberg had released plaintiff to return to work. *PageID* 480.

Plaintiff presented to an emergency room on February 1, 2010 with complaints of bilateral hand weakness for the prior three days. *PageID* 460-74. Examination of the extremities was normal; there was active range of motion and no tenderness. *PageID* 461. A CT of the head showed a remote infarct involving the posterior right temporal lobe. No acute intracranial process was identified. *PageID* 464. Plaintiff was released in stable condition and instructed to follow up with her family physician. *PageID* 470.

On February 19, 2010, plaintiff reported to Dr. Rosenberg that she had developed a new type of episode, involving hand crunching, thumb twitching, and numbness in one side of the face and lips, mostly on the left. The episode had lasted about a minute, after which plaintiff felt light headed, nauseated and fatigued. Dr. Rosenberg diagnosed probable focal seizures. He increased her Topamax. *PageID* 515-16. An EEG taken on March 3, 2010 was normal. *PageID* 530.

In March 2010, Dr. Rosenberg reported that plaintiff had better headache control with Topamax, although she had experienced one severe headache since her last visit. She also reported one or two seizures since her last visit. Dr. Rosenberg again increased her Topamax. He did not restrict plaintiff from driving, however, since she reported only partial simple seizures without loss of consciousness and was

8

able to use at least one arm without difficulty during the entire course of the seizure-type activity. *PageID* 576-77. "[If s]he loses consciousness obviously this restriction will need to be imposed." *Id.*

On May 22, 2010, state agency physician W. Jerry McCloud, M.D., reviewed the record and concluded that plaintiff has no exertional limitations but that, because of the risk of falling as a result of her seizures, she can only occasionally climb ramps and stairs, can never climb ladders, ropes, or scaffolds and should avoid operating heavy machinery. State agency physician Sarah Long, M.D., affirmed Dr. McCloud's opinion on August 31, 2010. *PageID* 606.

On July 15, 2010, plaintiff complained to Dr. Rosenberg of depression for a number of months, with gradually increasing severity. She also reported an increase in the frequency of her seizures and migraines, which typically occurred at the same time. Dr. Rosenberg recommended a psychiatric consultation and started plaintiff on Effexor. *PageID* 574-75. On August 5, 2010, plaintiff reported that she had discontinued Effexor because of its side effects. Her headaches were occurring every other day but they were tolerable. Dr. Rosenberg prescribed Celexa for depression. *PageID* 584-85.

In August 2010, Albert E. Virgil, Ph.D., J.D., conducted a psychological examination of plaintiff on behalf of the state agency. *PageID* 587-91. Plaintiff reported psychiatric treatment during her

9

late adolescence. Dr. Virgil noted a depressed mood and characterized plaintiff's judgment as average. Dr. Virgil diagnosed a dysthymic disorder. Her prognosis was guarded. Although Dr. Virgil assigned a functional Global Assessment of Functioning ("GAF") score of 50, which is suggestive of serious symptomatology, Dr. Virgil also concluded that plaintiff's ability to withstand the stress and pressures associated with day-to-day work activity was only mildly impaired because of her depressed mood. Dr. Virgil found no impairment in all other work-related areas. *Id.* From a mental standpoint, he found that plaintiff is able to "understand[], remember[] and follow[] simple, and some multi-step, repetitive tasks." *PageID* 590.

In August 2010, Paul Tangeman, Ph.D., reviewed the record for the state agency and concluded that plaintiff did not suffer a severe psychological impairment. *PageID* 592, 604.

When plaintiff saw Dr. Roberts on September 15, 2010, she reported nightly nose bleeds for the prior week. *PageID* 613. On follow-up on September 22, 2010, plaintiff denied any further nosebleeds or other complaints. She was doing and feeling well. *PageID* 611-12.

Plaintiff saw psychiatrist Adenike Moore, D.O., on three occasions. *PageID* 622-28. On September 16, 2010, Dr. Moore diagnosed major depressive disorder, recurrent and moderate, and assigned a GAF of 60, which is suggestive of moderate symptoms. Dr. Moore increased

plaintiff's Celexa. On October 18, 2010, Dr. Moore noted that plaintiff was feeling better. *PageID* 624. She reported 5/10 on the depression intensity scale and 5/10 on the anxiety intensity scale. Her mood and affect were depressed and anxious. *Id.* On January 24, 2011, plaintiff advised Dr. Moore that she felt worse. *PageID* 622. Her depression was rated 6/10, and her anxiety was rated 5/10. Her mood and affect were again depressed and anxious. *Id.*

Gretchen Horner, a certified nurse practitioner in Dr. Rosenberg's office, saw plaintiff on May 17, 2011 for follow up of her seizure activity and migraine headaches. Plaintiff reported that her most recent seizure had occurred one month earlier; she was experiencing severe, intermittent headaches. Plaintiff's examination was essentially normal. Ms. Horner assessed complex partial seizure with secondary generalization, migraines and depression. *PageID* 685-88.

On July 13, 2011, plaintiff presented to an emergency room with a migraine headache which had begun two days earlier. She described her symptoms as moderate, throbbing, and constant. Her headache resolved with medication. *PageID* 693-96.

In his decision, the administrative law judge found that plaintiff's severe impairments consist of seizure disorder, a hypercoaguable state with remote lower left extremity deep vein thrombosis and thromboses and migraine headaches. *PageID* 68. The

11

administrative law judge expressly excluded plaintiff's depression as a severe impairment because he found no persuasive evidence that this condition would cause more than a minimal limitation in plaintiff's ability to perform basic work activities. *PageID* 69.  The administrative law judge went on to find that plaintiff's impairments neither met nor equaled a listed impairment, specifically addressing Listings 7.08, 11.02 and 11.03. *PageID* 69.  The administrative law judge next found that plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can only occasionally climb ramps and stairs, she cannot climb ladders, ropes and scaffolding and she must avoid all exposure to workplace hazards such as dangerous machinery, unprotected heights and sharp objects. *PageID* 70.

The administrative law judge next found that this residual functional capacity precluded the performance of plaintiff's past relevant work. *PageID* 76. Relying on the vocational expert's testimony, however, the administrative law judge found that plaintiff is able to perform other work that exists in significant numbers in the national economy. *PageID* 76-77. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act.  *PageID* 77.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings

of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In her *Statement of Errors*, plaintiff contends that the administrative law judge erred in finding that plaintiff's migraine headaches and seizures are not disabling. Specifically, plaintiff argues that her testimony as to the severity and frequency of her

13

seizures and her migraine headaches is supported by the medical evidence in this case and demonstrates that she would miss work more than one day per month. Because the vocational expert testified that this would be work preclusive, plaintiff argues that the administrative law judge erred in finding that her severe impairments are not disabling. *See* Doc. No. 14-1 at *PageID* 711. Plaintiff also contends that the administrative law judge erred in finding that plaintiff's diagnosed depression is not a severe impairment. *Id.* at *PageID* 713.

Plaintiff's first contention is based on the credibility of her subjective complaints and testimony relating to the frequency and severity of her impairments. However, the administrative law judge expressly found that those complaints and her testimony are not fully credible. In this regard, the administrative law judge noted that Dr. Rosenberg had released plaintiff for driving and working, that the objective medical evidence establishes that plaintiff's headaches have been reduced by medication, that plaintiff's daily activities were inconsistent with her subjective complaints, that plaintiff "may have non-disability related reasons for not working," *PageID* 74, that plaintiff's testimony and reports to medical providers are at times inconsistent and that no treating or examining source has indicated that plaintiff is disabled or more limited than was found by the administrative law judge. *PageID* 73-75.

14

A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). *See also* 42 U.S.C. § 423(d)(5)(A). In evaluating subjective complaints, a court must look to the record to determine whether there is objective medical evidence of an underlying medical condition. *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). If so, the court must then determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint. *Id*. (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness' demeanor while testifying. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is

15

without authority to revisit those determinations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge carefully considered the plaintiff's subjective complaints in light of the objective evidence, noted and applied all appropriate standards and clearly articulated the bases of his credibility determination. That determination enjoys substantial support in the record and the Court is therefore without authority to revisit that credibility determination. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 269, 376 (6th Cir. 2003).

Plaintiff also complains that the administrative law judge failed to include depression among plaintiff's severe impairments. The Commissioner's regulations define a "severe impairment" as one "which significantly limits [the claimant's] physical or mental ability to do basic work activities, ... ." 20 C.F.R. §§ 404.1520(c); 416.920(c). Basic work activities include physical functions "such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. §§ 404.1521(b)(1); 416.921(b)(1). The United States Court of Appeals for the Sixth Circuit has held that an impairment is not severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of

age, education, or work experience." *Farris v. Secretary of Health and Human Services*, 773 F.2d 85, 89-90 (6th Cir. 1985), quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). *See also Estran v. Heckler*, 745 F.2d 340 (5th Cir. 1984). The burden is on the claimant to establish the existence of a severe impairment. *Bowen v. Yuckert*, 482 U.S. 137 (1987).

Plaintiff specifically contends that the Dr. Virgil's GAF score of 50 and Dr. Moore's GAF score of 60 and treatment notes establish that plaintiff's depression is a severe impairment. "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health." *Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 2012 WL 372986 (6th Cir. Feb. 7, 2012). An administrative law judge is not bound by GAF scores, *Kornecky v. Commissioner of Social Security,* 167 Fed. Appx. 496, 503 n. 7 (6th Cir. 2006), and the United States Court of Appeals for the Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *Rutter v. Commissioner of Soc. Sec.,* 1996 WL 397424 at *2 (6th Cir. July 15, 1996). Dr. Virgil's clinical evaluation and narrative assessment of plaintiff's mental impairment, in which he noted either no or only mild limitation of function, is entirely inconsistent with the GAF score assigned by him. Similarly, Dr. Moore's few treatment notes articulated no limitation of function

17

by reason of plaintiff's depression. Under these circumstances, and considering that the state agency psychologist opined that plaintiff has no severe mental impairment, the Court concludes that the administrative law judge's finding in this regard is also supported by substantial evidence.

Having carefully considered the record in this case, the Court concludes that the decision of the Commissioner applied all appropriate standards and enjoys substantial support in the record.

It is therefore **RECOMMENDED** that the decision of the Commissioner of Social Security be affirmed and that this action be dismissed.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P.
72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation.*

*See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


Date: January 28, 2013           *s/Norah McCann King*
                                 Norah McCann King
                                 United States Magistrate Judge

19